**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **EDNA JUNE KEATLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:15-12290** |
| | ) | |
| **CAROLYN W. COLVIN ,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Orders entered August 17, 2015, and January 5, 2016 (Document Nos. 4 and 13.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). This case presently is pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Edna June Keatley, (hereinafter referred to as "Claimant"), filed an application for SSI on August 31, 2011 (protective filing date), alleging disability as of February 1, 2009,[1] due to peripheral vascular disease, hypertension, heart problems, and bone spurs. (Tr. at 10, 225, 226-33, 244, 248.) The claim was denied initially and upon reconsideration. (Tr. at 10, 61-68, 69, 70-78, 79, 80-82, 86-86-88.) On April 13, 2012, Claimant requested a hearing before

---

[1] On June 6, 2013, Claimant amended her alleged onset date from February 1, 2009, to August 31, 2011. (Tr. at 10, 240.)

an Administrative Law Judge (ALJ). (Tr. at 89.) A hearing was held on June 6, 2013, before the Honorable Sabrina M. Tilley, and a supplemental hearing was held on January 17, 2014. (Tr. at 10, 26-35, 36-60.) By decision dated March 21, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 10-25.) The ALJ's decision became the final decision of the Commissioner on July 21, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on August 14, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of

2

disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic

3

limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). [2] Fourth, if the claimant's

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since August 31, 2011, the application date. (Tr. at 12, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "plantar fasciitis, high blood pressure, mitral valve insufficiency, premature ventricular contractions, dysthymic disorder, anxiety disorder and borderline intellectual functioning," which were severe impairments. (Tr. at 12, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity

("RFC") to perform light level work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She is limited to only occasional exposure to extreme cold, extreme heat, humidity, wetness and vibration. She must avoid all exposure to hazards, such as machinery and heights. She is limited to simple tasks and can respond appropriately to occasional interaction with coworkers, supervisors and the general public. She can make simple, work-related decisions and can make an adjustment to occasional changes in the work routine.

(Tr. at 17-18, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 23, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a counter clerk, mailroom clerk, and an office assistant, at the unskilled light level of exertion. (Tr. at 24, Finding No. 9.) On this basis, benefits were denied. (Tr. at 24, Finding No. 10.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v.</u>

<u>Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on April 25, 1962, and was 51 years old at the time of the supplemental administrative hearing, January 17, 2014. (Tr. at 26, 39, 226.) Claimant had a ninth grade or limited education and was able to communicate in English. (Tr. at 23, 40, 247, 249.) Claimant had no past relevant work. (Tr. at 23, 55.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to account for her moderate difficulties in concentration, persistence, or pace that she found to exist. (Document No. 11 at 9-11.) Citing <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), Claimant contends that the ALJ's RFC assessment that limited her to simple, routine work with simple work-related decisions and occasional changes in the work routine, was insufficient to accommodate a moderate limitation in maintaining concentration, persistence, or pace. (<u>Id.</u> at 10.) She asserts that the jobs identified by the VE require an individual to have at least a high school education and to maintain concentration and pace, or meet a quota. (<u>Id.</u>) The ALJ's failure to include all the limitations in the hypothetical question to the VE, resulted in unreliable testimony from the VE. (<u>Id.</u>) Claimant therefore, contends that the ALJ's step five decision is not supported by the substantial evidence of record. (<u>Id.</u> at 10-11.)

In response, the Commissioner asserts that the ALJ acted in accordance with <u>Mascio</u> and relied

on agency guidelines that restrictions in the broad functional areas of concentration, persistence, or pace, did not constitute an RFC assessment. (Document No. 12 at 10.) Pursuant to SSR 96-8p, the Commissioner asserts that the RFC assessment is more detailed than the assessment at steps two and three of the sequential analysis. (Id.) Pursuant to 20 C.F.R. § 416.921(b), the Commissioner notes that the RFC must be stated in terms of work-related functions including the ability to use judgment; respond appropriately to supervision, co-workers, and unusual work settings; deal with changes in routine work settings; and understand, carry out, and remember simple instructions. (Id.) Moderate difficulties in a broad functional area therefore, are not work-related functions as a claimant is unable to "do moderate difficulties." (Id. at 10-11.) In this case, the Commissioner contends that the VE's hypothetical question properly included limitations to simple tasks, occasional interaction with others, simple work-related decisions, and occasional changes in the work routine. (Id. at 11.) The Commissioner further asserts that unlike Mascio, the ALJ evaluated all the medical evidence and explained why the RFC did not warrant further limitations. (Id.) Accordingly, the Commissioner contends that the ALJ properly assessed Claimant's RFC, which was supported by substantial evidence. (Id. at 12-13.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assigning no weight to the opinion of Dr. Meshel, Claimant's treating cardiologist. (Document No. 11 at 11.) Claimant asserts that the ALJ's stated reasons for giving Dr. Meshel's opinion no weight, that the cardiac classification was unsupported by the record and inconsistent with daily activities and physical exam findings, were not "good reasons" as required by the Regulations and Rulings, and were unsupported by substantial evidence. (Id. at 12.) Contrary to SSR 96-2, Claimant asserts that the ALJ failed to cite to any persuasive evidence contrary to Dr. Meshel's opinion. (Id.) Claimant further asserts that Dr. Meshel's opinion was consistent with Dr. Beard's opinion. (Id. at 13.)

8

In response, the Commissioner asserts that Dr. Meshel failed to provide any explanation for his opinions and that the evidence of record did not support his cardiac classification. (Document No. 12 at 14.) The Commissioner asserts that despite Claimant's allegations of disabling limitations and symptoms of heart failure, Claimant engaged in regular daily activities, her cardiac symptoms markedly improved on medication, and examination findings essentially were normal. (Id. at 14-16.) Respecting Claimant's legs, studies were normal and revealed only mild impairment. (Id. at 16.) The ALJ also gave Dr. Beard's opinion some weight as it was consistent with the evidence. (Id. at 17.) Accordingly, the Commissioner contends that the ALJ's decision to give no weight to Dr. Meshel's opinion is supported by the substantial evidence of record. (Id. at 17-19.)

Analysis.

1. RFC Assessment.

Claimant alleges that the ALJ erred in failing to account sufficiently for her moderate limitations in concentration, persistence, and pace. (Document No. 11 at 11-13.) Specifically, Claimant asserts that the ALJ's hypothetical question failed to account for these moderate limitations and that the ALJ failed to provide an adequate explanation for her RFC assessment. (Id. at 9-11.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including "the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Id. at *5. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id. at *3. This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate exertional level for the claimant, and whether the claimant is "capable of doing the full range of work

9

contemplated by the exertional level." Id. Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2014). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at *7.   The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." Id.

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess

10

a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (*Citing* Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

In the instant case, the ALJ found at steps two and three of the sequential analysis, that Claimant had mild restrictions in maintaining daily activities; moderate limitations in maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 16-17.) Respecting the moderate limitations in concentration, persistence, or pace, the ALJ acknowledged Claimant's ability to drive, pay bills, count change, manage a savings account, use a checkbook and money order, and play Yahtzee with her sisters on Saturdays. (Tr. at 16.) The ALJ also acknowledged Claimant's alleged limitations, which included an inability to pay attention for very long, having to re-read instructions to understand them, difficulty finishing tasks, and difficulty following spoken directions due to poor memory. (Tr. at 16-17.) Nevertheless, the ALJ noted that in July 2013, a consultative examination revealed normal concentration, persistence, or pace; and in August 2013, Claimant was able to follow instructions without difficulty. (Tr. at 17.) In assessing Claimant's RFC, the ALJ posed a hypothetical question to the VE that assumed an individual who was "limited to simple tasks, can respond appropriately to occasional interaction with coworkers, supervisors and the general public, can make simple work related decisions and make adjustments to occasional changes in the work routine." (Tr. at 55-56.) The VE responded that such an individual was able to perform unskilled work at the light level of exertion. (Tr. at 56-59.) The ALJ therefore, assessed an RFC that included the same mental limitations posed to the VE, and found that Claimant was capable of performing simple tasks, responding appropriately to occasional interaction with others, making simple work-related decisions, and making an adjustment to occasional changes in the work

setting. (Tr. at 18.)

In Mascio, the Fourth Circuit held that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638; see also, Monroe v. Colvin, __ F.3d __, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016). The Fourth Circuit reasoned that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitations in concentration, persistence, or pace." Mascio, 780 F.3d at 638. Inconsistent with the facts in Mascio, the ALJ here accounted for Claimant's limitations in maintaining concentration, persistence, or pace. Thus, the ALJ explained the exclusion of the specific moderate limitations in her hypothetical question to the VE.

The undersigned finds the Commissioner's argument persuasive. Pursuant to SSR 96-8p, the rating of the broad functional area of concentration, persistence, or pace is not an RFC assessment. Rather, it is used to rate the severity of the claimant's mental impairments at steps two and three of the sequential analysis. The RFC assessment is more detailed and identifies the most a claimant can do despite her limitations, expressed in work-related functions. 20 C.F.R. 416-645(a)(I). The Regulations identify such work-related mental functions to include:

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b)(3)-(6). Thus, it is clear that the ALJ's assessed limitations encompassed these work-related mental functions. Her assessment was consistent with the Rulings, Regulations, and decisions in Mascio and Monroe. Accordingly, the undersigned finds that Claimant's argument is

without merit.

    2.   *Treating Opinion*.

        Claimant also alleges that the ALJ erred in failing to assign any weight to the opinion of her treating physician, Dr. Meshel. (Document No. 11 at 11-13.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2014). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

        Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological

consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2014). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2014). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2014). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

The record reflects that on December 1, 2011, Dr. Fulvio Franyutti, M.D., a State agency physician, opined that Claimant was capable of performing a limited range of light work, with

14

occasional postural limitations and never climbing ramps or stairs. (Tr. at 65-66.) On February 26, 2012, Dr. A. Rafael Gomez, M.D., another State agency physician, likewise opined that Claimant was capable of performing light exertional level work, with the same postural limitations. (Tr. at 74-76.)

The record further reflects Claimant's treatment from Dr. Jack C. Meshel, M.D., for a history of cardiac symptoms and hypertension. (Tr. at 402-26, 450-70.) On September 14, 2011, Dr. Meshel noted a history of chest pain that radiated into the left arm with some diaphoresis and dizziness. (Tr. at 413.) Her symptoms "markedly improved on her medications." (Id.) She was diagnosed with chest pain, accelerated hypertension, premature ventricular contractions, and mitral valve insufficiency. (Id.) On December 12, 2011, and March 7, 2012, the diagnoses of coronary artery disease with angina pectoris and tricuspid valve insufficiency were added, because of an echocardiogram that showed an ejection fraction of 65%, with mitral and tricuspid valve insufficiency. (Tr. at 411-12.) On September 26, 2012, Dr. Meshel noted that Claimant had worn a Holter monitor, which showed premature ventricular contractions and runs of ventricular tachycardia with some premature atrial contractions. (Tr. at 410.) She was prescribed Flecainide 100mg. (Id.) Dr. Meshel noted on November 5, 2012, that Claimant was markedly improved on Flecainide. (Tr. at 408.) Claimant was given another Holter monitor on January 29, 2013, which continued to reveal multiple ventricular contractions and premature atrial contractions, "but markedly improved from before." (Tr. at 406-07.)

On March 7, 2013, Dr. Meshel noted that Claimant had a transient ischemic attack with symptoms of weakness of the arm and leg, dizziness, and slurred speech. (Tr. at 404.) An echocardiogram revealed a 65% ejection fraction with mild left ventricular hypertrophy and mitral and tricuspid valve insufficiency. (Tr. at 404, 417.) A Carotid Doppler showed mild plaque

15

bilaterally and an Arterial Doppler of the legs showed mild peripheral arterial disease. (Tr. at 404, 416.) Dr. Meshel noted that Claimant had not taken her blood pressure medication that day despite having been warned about taking it and following a low-salt diet. (Tr. at 404.)

On June 6, 2013, Dr. Judith Brendemuehl, M.D., an impartial medical expert, testified at the administrative hearing as to Claimant's physical impairments. (Tr. at 30-34, 139-40.) Dr. Brendemuehl testified that despite reports of dizziness on February 10, 2013, an echocardiogram revealed normal sinus rhythm and a CT scan of the brain was normal. (Tr. at 31.) Claimant had evidence of carotid stenosis, but nothing significant that would have indicated an ischemic attack. (Id.) She further testified that Claimant was treated for hypertension, but stress testing revealed a normal ejection fraction of 65%. (Tr. at 32-33.) She recommended a consultative examination for further evaluation of her peripheral vascular disease. (Tr. at 33-34.) Dr. Brendemuehl testified that Claimant did not have any severe physical impairment. (Tr. at 34.)

On June 11, 2013, Dr. Meshel completed a form Cardiac RFC Questionnaire, on which he opined that Claimant had not experienced any significant improvement in her limitations since the last questionnaire and that her NYHA classification was Class III-IV. (Tr. at 22, 402.) He further opined that Claimant was incapable of engaging in employment at any level of exertion. (Id.) On July 31, 2013, Dr. Meshel noted that a Venous Doppler revealed no DVT and an echocardiogram showed an ejection fraction of 65-70%. (Tr. at 450.)

On August 21, 2013, Dr. Beard conducted a consultative examination. (Tr. at 22-23, 436-49.) On physical examination, Dr. Beard observed that Claimant presented with a normal gait, without ambulatory aids, and was able to follow instructions without difficulty. (Tr. at 438.) Cardiovascular examination revealed a 1-2/6 soft early systolic murmur, left of the sternal border with regular rate and rhythm without gallops or rubs. (Tr. at 439.) Her blood pressure was 122/80,

which Dr. Beard noted was stabilized. (Tr. at 439, 441.) Neurologic examination was unremarkable and Dr. Beard noted that Claimant was able to heel-walk, toe-walk, tandem walk, and squat, and had no difficulty in walking. (Tr. at 438, 440.) His impressions included chest pain, likely not ischemic in nature; presyncope; fatigue; mild peripheral arterial occlusive disease; left calcaneal heel spur with left plantar fasciitis; and hypertension. (Tr. at 440.) Dr. Beard concluded that Claimant's symptoms included an exertional and stress component, as they improved with rest. (Tr. at 440.) He concluded that her clinical heart assessment was unremarkable, with only trace edema but an absence of ischemic changes. (Id.) He further noted that there was no evidence of stroke. (Id.) Although Claimant reported symptoms of an abnormal sensation of some generalized pressure about the neck, head, and arms, Dr. Beard concluded that they were attributable either to the blood pressure or her treatment. (Tr. at 441.)

Dr. Beard also completed a form Medical Source Statement of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant was capable of lifting 50 pounds occasionally and lift 20 pounds frequently; sit for four hours, two hours at a time; stand and walk for two hours, one hour at a time; and never could climb ladders or scaffolds. (Tr. at 22, 442-45.) He further opined that Claimant frequently could stoop, kneel, crouch, and crawl and never could be exposed to unprotected heights. (Tr. at 22, 445-56.) Dr. Beard opined that Claimant frequently could be exposed to humidity and wetness and occasionally could be exposed to temperature extremes, vibrations, and environmental irritants. (Tr. at 22, 446.) He noted that Claimant was capable of performing her daily activities. (Tr. at 22-23, 447.)

In her decision, the ALJ rejected Dr. Meshel's cardiac classification of III to IV because associated limitations were not evidenced by the record and the classification was inconsistent with Claimant's reported activities and physical findings on examination. (Tr. at 22.) As the ALJ

17

found, Dr. Meshel's treatment notes reflected that Claimant's symptoms markedly improved on medication. Furthermore, there is no indication in his treatment records that Dr. Meshel placed upon Claimant any physical limitations or that Claimant asserted any such limitations. Dr. Beard concluded that Claimant's clinical heart assessment was unremarkable, without any ischemic changes. The Commissioner explains in her pleadings that the American Heart Association's classification of functional capacity from I to IV, is based on subjective symptoms. (Document No. 12 at 14.) The Commissioner explains that a class III to IV indicates "an individual's reported symptoms of the inability to carry on any physical activity without discomfort, marked limitation of physical activity, symptoms of heart failure even at rest, and pain with no (or very little) activity." (Id.) The ALJ rejected Dr. Meshel's classification as inconsistent with Claimant's reported activities and physical exam findings, as discussed above. The ALJ further found that although Dr. Meshel opined that Claimant was unable to work, such a finding regarded an issue reserved to the Commissioner. (Id.)

Regarding her daily activities, the ALJ acknowledged Claimant's testimony that she was able to walk behind his house with her grandson about once a week, would place dishes in the dishwasher, watch television, prepare full meals with the help of her husband, do some cleaning, place clothes in the washer and dryer, and care for her personal needs. (Tr. at 21, 47-49.) In addition to her testimony, reports to medical providers and written reports indicated that she was able to vacuum, read, swim, walk to her mailbox, water and "dead-head" her flowers, shop for groceries and gifts, play Yahtzee, go to the mall, receive visits from family members, attend doctor appointments, drive, pay bills, and manage money. (Tr. at 21, 261-68, 280-87.) As discussed above, physical examinations were unremarkable. The ALJ also considered the evaluation of Dr.

18

Beard and gave his opinion some weight, but concluded that the evidence did not support the significant limitations in sitting, standing, and walking. (Tr. at 23.)

In view of the foregoing, the undersigned finds that the ALJ properly evaluated Dr. Meshel's opinion according to the Rules and Regulations and finds that her decision is supported by the substantial evidence of record. Dr. Meshel's opinion was inconsistent with his treatment notes and Claimant's reported activities. Accordingly, the undersigned finds that the ALJ's decision to give no weight to Dr. Meshel's opinion is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: July 12, 2016.

Omar J. Aboulhosn
United States Magistrate Judge